IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

BRYAN DONALD MURPHY,

                Plaintiff,

v.                                CIVIL ACTION NO.   3:13-cv-28760

INTERNATIONAL PAINTERS AND
ALLIED TRADES INDUSTRY
PENSION FUND, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed a *pro se* complaint under the Employee Retirement Income Security Act ("ERISA").  Plaintiff and Defendants filed cross-motions for summary judgment.  This action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  The Magistrate Judge has submitted findings of fact and recommended that Plaintiff's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART** and that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.  Upon *de novo* review of the findings and recommendations, the Court **DENIES** Plaintiff's objections (ECF No. 39); **DENIES** Defendants' objections (ECF No. 38); and **ADOPTS** and **INCORPORATES** the Proposed Findings and Recommendations (ECF No. 37).

**I.       Background**

The relevant facts are laid out in great detail in the Magistrate Judge's Proposed Findings and Recommendations so the Court need only summarize them here.  *See* ECF No. 37.   Plaintiff

worked as a painter and sandblaster until he suffered a work-related injury in 2001. Plaintiff stopped working in 2002 as a result of his injury and related complications. In 2003 Industrial Commission of Ohio declared Plaintiff temporarily totally disabled and approved his claim for benefits. In 2008 he was declared permanently totally disabled as of February 12, 2007.

Plaintiff also applied for disability insurance benefits from the United States Social Security Administration ("SSA"). Plaintiff's first application was denied on April 25, 2006 and the denial was affirmed. Plaintiff filed a second application, which was granted on March 6, 2013. The administrative law judge, Andrew J. Chwalibog ("ALJ Chwalibog"), noted that Plaintiff alleged a disability onset date of December 21, 2002, but held that the earliest possible date Plaintiff could receive SSA disability benefits was the day after the date of the previous ALJ decision denying Plaintiff's first application for benefits. ALJ Chwalibog found Plaintiff disabled as of April 26, 2006.

In 2008, Plaintiff applied for disability pension benefits from Defendant International Painters and Allied Trades Industry Pension Fund ("the Pension Fund"). To meet the eligibility requirements for disability pension benefits, an applicant must, among other requirements, be totally and permanently disabled and have at least 1,000 hours of service in covered employment in the two years prior to the year of disability onset. In 2013 after the SSA approved his application for disability benefits, Plaintiff sent a letter to Defendant Gary Meyers, the fund administrator at the time. In the letter Plaintiff informed Defendant Meyers of the SSA decision and explained that although Plaintiff's disability began in 2002, ALJ Chwalibog could not legally set his disability onset date earlier than April 26, 2006. Later that year Mr. Meyers and Plaintiff discussed Plaintiff's application over the telephone. According to Plaintiff, Mr. Meyers indicated that he would be approving Plaintiff's application. Later that same day Plaintiff was informed by

another employee of the Pension Fund that his application was going to be denied.   Defendant Meyers then sent Plaintiff a letter reflecting the denial of his application.   The letter indicated that Plaintiff's application was denied because he failed to meet the requirement of 1,000 hours of service in the two years before the year in which he became disabled.   The letter stated that he became disabled in 2006 but did not have 1,000 hours of service in 2004 and 2005.   The letter did not state which version of the Pension Fund's pension plan was used to determine whether Plaintiff qualified for pension disability benefits.

Plaintiff sent letters to Defendant Meyers requesting "complete copies . . . of any and all documents governing the operation of the plan that may be used, referred to, considered or control any decision with respect to my application for disability retirement filed on March 5, 2008" as well as a copy of his claim file, the pension plan in effect in 2002, and any plan documents filed with the Department of Labor.   Defendant Meyers sent Plaintiff the summary plan description ("SPD") from 1999, a copy of his Contribution Details report, his a copy of his SSA award letter, and the 2003 pension plan.

Plaintiff then appealed Defendant Meyers's decision to deny his application to the Board of Trustees of the Pension Fund.   On appeal Plaintiff argued, *inter alia*, that his disability onset date was in 2002 and that he met the 1,000-hour requirement in the two previous years, 2000 and 2001. Plaintiff disagreed with Defendant Meyers's use of the SSA disability onset date of April, 2006. Alternatively, Plaintiff argued that even if his date of onset was determined to be in 2006, he met the required 1,000 hours in 2004 and 2005 because he is entitled to a 501-hour credit for each year of his absence from employment.   In support of this conclusion, Plaintiff cited a separate portion of the pension plan, which governs the vesting of pension rights rather than eligibility for disability pension benefits.   The Board of Trustees denied the appeal, explaining that under their

interpretation of the pension plan, the plan uses the date of disability onset as determined by the SSA as the date of disability.  The Board of Trustees thus agreed with Defendant Meyers that Plaintiff was disabled as of 2006.  They also found that Plaintiff had not met the 1,000-hour requirement in the years 2004 and 2005.

Plaintiff subsequently filed suit against Defendant Meyers, the Board of Trustees, and the Pension Fund under the Employee Retirement Income Security Act ("ERISA").  Plaintiff's complaint includes six causes of action: (1) Enforce and Clarify Benefits, (2) Breach of Fiduciary Duty, (3) Failure to Provide Plan Fund Documents, (4) Bad faith/Gross Negligence, (5) Equitable Estoppel, and (6) Fees and Costs.  Plaintiff and Defendants each filed motions for summary judgment.  In her proposed findings and recommendations, the magistrate judge recommends granting Defendant's motion for summary judgment and denying Plaintiff's motion for summary judgment on all counts except with respect to part of Plaintiff's claim for failure to provide plan fund documents and part of Plaintiff's request for fees and costs.  The magistrate judge further recommends a statutory penalty against Defendants in the amount of $7,450 for failure to provide one of the plan documents.  Finally, due to Plaintiff's success on the merits, the magistrate judge recommends awarding costs to the Plaintiff.

## II.    Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a *de novo* review of any portion of the Magistrate Judge's report to which objection is timely made.  As to those portions of the report to which no objection is made, the Magistrate Judge's report will be upheld unless it is "clearly erroneous" or "contrary to law."  *See Webb v. Califano*, 468 F. Supp. 825, 828 (E.D. Cal. 1979) (citing 28 U.S.C. § 636(b)(1)(A)).  Furthermore, the Court need not conduct a *de novo* review "when a party makes general and conclusory objections that do not direct the court to a

-4-

specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted).

Both parties have moved for summary judgment.   To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).   The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.   Where facts are not in dispute, it is the task of the court to apply the law to the undisputed facts and determine which party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

### III.   Discussion

Plaintiff and Defendants have filed objections to the Proposed Findings and Recommendations.   Plaintiff's objections are lengthy, consisting of fifty paragraphs. Defendants have filed two objections.   Given the complex nature of this case and the significant number of objections, the Court will address the objections in groups as they relate to each of Plaintiff's causes of action.

### A.  Count One: Enforce and Clarify Benefits

Plaintiff's first cause of action challenges the Defendants' decision to deny his application for pension disability benefits.   The magistrate judge reviewed Defendants' decision for abuse of discretion.   Under this standard of review, Defendant's decisions should "not be disturbed if they are reasonable."   *Bernstein v. CapitalCare Inc.*, 70 F.3d 783, 787 (4th Cir. 1995).   The magistrate judge found Defendants' decisions regarding the denial of Plaintiff's application to be reasonable and recommends that Defendants' motion for summary judgment be granted, and Plaintiff's motion for summary judgment be denied, as to Count One.   Plaintiff objects to the standard of review, the finding that Defendants' interpretation of the pension plan was reasonable, and the finding that Defendants' application of the pension plan to his claim for benefits was reasonable.   Plaintiff raises numerous grounds to support these objections, each of which is addressed below.

#### 1.  Standard of Review

Plaintiff objects to the magistrate judge's holding that abuse of discretion is the proper standard of review to apply to this claim.   ECF No. 39 ¶¶ 3, 4, 9.   He argues that the correct standard is *de novo* review.   Plaintiff insists that abuse of discretion is an inappropriate standard "given the Defendant's complete abuse of their discretion in mishandling Mr. Murphy's claim." ECF No. 39 ¶ 9.   The contents of the pension plan, rather than a party's behavior, govern the standard of review.   Where a beneficiary brings an action under ERISA to enforce his right to pension benefits or clarify his right to such benefits, "the *de novo* standard of review applies" unless the plan provides otherwise.   *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).   If the applicable plan "gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan," the applicable standard of review is abuse of discretion.   *Id.*

Plaintiff and Defendants disagree about which version of the pension plan governs Plaintiff's application; Plaintiff argues that the 1999 plan applies whereas Defendants claim the 2003 plan applies and was used to deny the application.   The 1999, 2003, and 2010 plans each expressly give the Trustees full discretionary authority to interpret the plan, resolve ambiguities, and apply the plan to any application for pension benefits.   *See* ECF No. 31, Ex. 3; ECF No. 26, Exs. 9, 14.   Abuse of discretion is thus the correct standard of review regardless of which plan is applicable.   Plaintiff's objection to the applicable standard of review is therefore denied.

Plaintiff also claims that the magistrate judge improperly "pick[ed] certain aspects of the claim" to review *de novo* and others to review for abuse of discretion "while insisting on not construing ambiguities in favor of the Plaintiff."   ECF No. 39 ¶ 18.   As to the claim that the magistrate judge improperly applied different standards in reviewing Plaintiff's first cause of action, the Court finds no indication that the magistrate judge has done so.   Plaintiff argues that the magistrate judge finds abuse of discretion applicable but then uses *de novo* review to determine which version of the plan applies to his claim.   Although the discussion of which plan applies to Plaintiff's claim and the discussion of the standard of review appear in the same section of the proposed findings and recommendations, the magistrate judge makes clear that the choice of plan does not change the applicable standard of review because the plans all contain the same language regarding discretionary authority.   The issue of which plan governs the application is instead pertinent to Plaintiff's claim for failure to produce documents.   Moreover, the section reviewing Defendants' decision to deny Plaintiff's application clearly applies the abuse of discretion standard.   Plaintiff also argues that the magistrate judge applied *de novo* review but then refused

to resolve ambiguities in his favor.   Again, the Court finds no evidence that the magistrate judge reviewed Defendants' decision to deny the application *de novo* rather than for abuse of discretion. Accordingly, the objection is denied.

### 2.   Contents of the SPD and Denial Letters

Plaintiff contends that the SPDs failed to define the circumstances under which he would be ineligible for benefits, in violation of ERISA.   ECF No. 39. ¶¶ 2, 31, 32.   He argues that the language of the SPDS would not lead a "reasonable person" in Plaintiff's position to conclude that he is not eligible for benefits.   ECF No. 39. ¶ 33.   Further, he maintains that under Defendants' interpretation of the plan, every single disability claim submitted to Defendants will depend on the SSA date of onset, and thus this information should have been explicitly included in the SPD.   As the magistrate judge pointed out, this argument is at most tangentially related to Plaintiff's claim for benefits, however the Court will address it.   ERISA requires an SPD to contain the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022 (2012).   Here, the 2006 SPD explicitly states that the date of disability onset is governed by an applicant's SSA award, and the 1999 SPD, although less explicit, explains that pension disability benefits begin once the SSA determines the applicant to be permanently and totally disabled.   ECF No. 26, Exs. 7, 11.   Furthermore, both SPDs explain that a beneficiary will become ineligible for disability pension benefits if he or she ceases to be permanently and totally disabled.   ECF No. 26, Exs. 7, 11.   The SPDs thus give applicants sufficient notice of the circumstances under which disqualification, ineligibility, or loss of benefits may occur. Plaintiff's objection to the contents of the SPD is thus denied.

Relatedly, Plaintiff argues that the denial letters from Defendants did not comply with ERISA and did not provide him with an adequate explanation of the basis for denying his claim.

-8-

ECF No. 39 ¶ 31.   Federal regulations pursuant to ERISA require that "notification of any adverse benefit determination" include "[t]he specific reason or reasons for the adverse determination" and "[r]eference to the specific plan provisions on which the determination is based."   29 C.F.R. § 2560.503-1(g)(1)(i)-(ii), (j)(1)-(2) (2015).   The denial letters both reference and quote Section 6, Article 6.12 of the pension plan, which Defendants used to determine Plaintiff's eligibility.   ECF No. 26, Exs. 4, 6.   The letters also explain that Plaintiff is ineligible for benefits because the SSA determined him to be disabled as of 2006 but he did not work 1,000 hours in 2004 and 2005.   ECF No. 26, Exs. 4, 6.   The letters thus meet the requirements of ERISA.   Plaintiff's objection is denied.

### 3.  Defendants' Interpretation of the Pension Plan

Plaintiff vehemently objects to Defendants' interpretation of the pension plan.[1]   He disagrees with Defendants that the plan allows them to use the date of disability onset as determined by the SSA.   He also contends that they misinterpret the plan by not awarding him a 501-hour credit for each year that he has been absent from employment due to his disability.

First, Plaintiff argues that Defendants' reliance on the SSA date of disability onset was not reasonable because the plan does not explicitly state how the Trustees must determine the onset date.   ECF No. 39 ¶¶ 14, 17.   Plaintiff argues that because the plan does not require use of the SSA's onset date, the Trustees must independently determine whether an applicant is disabled. ECF No. 39 ¶ 13.   Under the abuse of discretion standard, the Trustees' interpretation of the plan need not be the best interpretation, but only a reasonable one.   Here, the plan is ambiguous.   As long as the Trustees resolve the ambiguity in a reasonable way, they have not abused their discretion.   *See Bernstein*, 70 F.3d at 787.   Although the plan does not state that the SSA date of

---

[1] For purposes of consistency with the proposed findings and recommendations, the Court uses the term "plan" in this section to refer to both the amended 2003 pension plan and 2010 pension plan.

disability onset will be used to determine the date of disability onset under the plan, it also does not state that the Trustees must independently determine the date of disability onset.   ECF No. 26, Ex. 8.   The plan does explain that eligibility for benefits is dependent on the SSA determining that the beneficiary is permanently and totally disabled.   ECF No. 26, Ex. 8.   If this determination is later changed, the beneficiary becomes ineligible for disability pension benefits.   ECF No. 26, Ex. 8. Given the overall reliance on SSA determinations in the "Disability Pension" section of the plan, the Court finds the Trustee's interpretation of the plan language to be reasonable.

Plaintiff disagrees, asserting that Defendants' interpretation is not only incorrect on its face, but also conflicts with other provisions of the plan.   Plaintiff points to the plan provision regarding retroactive payment of disability benefits and objects to the magistrate judge's findings that this provision is not incompatible with Defendants' interpretation of the plan.   ECF No. 39, ¶ 28.   The retroactive payment clause states that benefits will backdate to "the later of the first date for which Social Security disability benefits are payable or the first day of the month following the month in which the Participant last worked in Covered Employment."   ECF No. 26, Exs. 10, 13. Plaintiff interprets this clause to mean that the onset date could either be the date determined by the SSA or the date that an applicant last worked.   The Court agrees with the magistrate judge's findings.   It is possible that the SSA may set the date of onset to a time before a beneficiary has completely ceased working, as some beneficiaries may attempt to continue to work after being injured and becoming disabled.   In such a case, the date in which the applicant last worked would be later than the onset date.   Retroactive benefits would thus date back to the last month of work, even though the beneficiary was disabled before that time.   This provision thus does not prevent reliance on the SSA's date of disability onset.

Additionally, Plaintiff argues that even if the plan's language could potentially be construed to rely on the disability onset date as determined by the SSA, the result in this case is unreasonable.   ECF No. 39 ¶ 26.   He maintains that an independent determination of the onset date is a more reasonable option.   He disagrees with the magistrate judge's conclusion that an independent determination "would necessarily require the costly creation of a medical review team to assess disability pension claims" because in his case the evidence in the record is sufficient to demonstrate his onset date.   ECF No. 39 ¶ 20.   Plaintiff also objects to the finding that the use of a medical review board could lead to conflicting findings, again because "that is not the case" with respect to his application.   ECF No. 39 ¶ 21.   He maintains that the medical evidence and workers' compensation records that he provided to Defendants, as well as the contents of ALJ Chwalibog's decision, show that his date of onset was significantly earlier than 2006.   ECF No. 39 ¶¶ 12, 15.   He explains that the SSA's formal date of onset "was solely the result of res judicata" and an examination of ALJ Chwalibog's opinion demonstrates that the onset date does not reflect "the actual date that the SSA believed Mr. Murphy had become disabled."   ECF No. 39 ¶ 19.   Plaintiff further argues that the evidence he submitted shows that it was impossible for him to comply with the requirement that he work 1,000 hours in the two years prior to his date of onset if that date of onset is determined to be 2006.   Thus, he concludes, using the SSA onset date was unreasonable and "impedes [his] claim for truly deserving benefits that he is otherwise qualified to receive."   ECF No. 39 ¶¶ 22, 29.

Plaintiff's proposed interpretation of the plan asks the Trustees to comb through and interpret complex administrative law decisions, medical records, and state agency findings rather than look to the date of onset explicitly set by the SSA.   He offers no viable explanation to support his conclusion that this interpretation is reasonable yet Defendants' simpler interpretation, which

is consistent with the overall language of the plan, is not.   Moreover, this portion of Plaintiff's objection focuses on the evidence in his case rather than the Trustees' interpretation of the plan as it applies to applicants generally.   Plaintiff may have medical records and a lengthy SSA opinion to support the onset date he claims, but other applicants may not and may require independent medical review.   He asks the Trustees to interpret the plan in a way he deems reasonable as it pertains to his application, his medical records, and his SSA decision.   What the Trustees must, and did, interpret in deciding how to determine the onset date is the plan itself, not the facts of Plaintiff's individual case.   Plaintiff fails to recognize that Defendants' would likely have abused their discretion had they interpreted the plan in one manner with respect to his application and a different manner with respect to other applications.   See *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000) (considering "whether the provisions at issue have been applied consistently" in determining whether fiduciary abused discretion).   The Trustees properly disregarded Plaintiffs' specific circumstances when interpreting the language of the plan, and instead considered his evidence in applying their interpretation and deciding whether he was eligible for benefits.   For these reasons, Plaintiff's objection to Defendants' interpretation of the disability onset provisions of the plan is denied.

Plaintiff further objects to the Defendants' interpretation of the 1,000-hour requirement. He argues that Defendants' interpretation conflicts with the provisions of the plan regarding the Family Medical Leave Act.   ECF No. 39, ¶ 36.   Although not clear from his objection, Plaintiff's memorandum in support of his motion for summary judgment explains that the section of the plan regarding vesting allows for a 501-hour credit for every year that a participant in the plan is absent from employment due to family or medical leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.   See ECF No. 30.   Plaintiff argues that it is inconsistent for the plan to

-12-

afford a 501-hour credit for every year of absence with respect to vesting but not apply a 501-hour credit for every year of absence with respect to disability pension benefits.   First, the Court notes that Plaintiff has provided no evidence that he ever sought leave under the FMLA.   Moreover, the vesting section of the plan deals with when benefits vest, or become the property of a beneficiary. This section addresses a wholly different issue from the section regarding eligibility for disability pension benefits.   Just because the plan gives employees credit with respect to one aspect of pension benefits and not another does not make the plan internally inconsistent.   Plaintiff's objection to Defendants' interpretation of the 1,000-hour requirement is therefore denied.

### 4. Defendants' Application of the Pension Plan

Plaintiff objects to the findings that Defendants' decision to deny his application is reasoned and principled and supported by substantial evidence.   ECF No. 39 ¶¶ 27, 30.   First, he maintains that the materials that the Trustees relied on to make their determination were inadequate.   ECF No. 39 ¶¶ 23, 24, 25.   One of the factors that courts look to in determining whether a fiduciary has abused its discretion is "the adequacy of the materials considered to make the decision and the degree to which they support it."   *Booth*, 201 F.3d at 342.   Plaintiff maintains that the materials he submitted do not support Defendants' decision because the contents of ALJ Chwalibog's decision and other relevant evidence demonstrate that he was disabled before 2006.   ECF No. 39 ¶ 23.   Plaintiff's objection is without merit given this Court's finding that Defendants were reasonable in using the SSA date of disability onset.   Defendant's reasonable interpretation of the plan deems this date the only date that the Defendants need look at under the plan.   Thus, the only document Defendants were required to evaluate in order to determine Plaintiff's date of disability onset was the SSA decision.   The remainder of the ALJ's opinion

beyond the official date of onset, and other evidence regarding Plaintiff's date of onset, are irrelevant.

Plaintiff cites to *Lester v. United Mine Workers Health & Retirement Fund*, 40 F. Supp. 2d 800 (S.D. W. Va. 1999) for the proposition that Defendants should have considered other materials in determining his date of onset, including his medical records and workers' compensation documentation.   ECF No. 39, ¶¶ 24.   He objects to the magistrate judge's finding that *Lester* is inapposite.   ECF No. 39, ¶ 25.   In *Lester*, the trustees of a pension fund were tasked with determining whether a miner's disability was caused by a mining accident.   *Lester*, 40 F. Supp. 2d at 807.   The court held that the trustees abused their discretion by failing to consider relevant medical evidence in determining the cause of the plaintiff's disability, instead cherry-picking the evidence and relying almost exclusively on the lapse in time between Plaintiff's mine accident and the date of disability onset as determined by the SSA.   *Id.* at 807-08.   They determined that too much time had passed between these dates to infer causation and denied the plaintiff's claim.   *Id.* at 807.   The court disagreed.   Causation is a complicated question and the court found that the plan required the trustees to consider all relevant evidence in answering it.   *Id.* at 807-08.   Unlike the trustees in *Lester*, Defendants here were not required to independently determine the cause of Plaintiff's injuries.   Instead, they were tasked with determining the date of disability onset, a much simpler inquiry under Defendants' interpretation of the pension plan.   Moreover, the trustees in *Lester* did look at some of the medical evidence, whereas Defendants here maintain that the plan only requires them to look at the SSA's date of onset.   *See id.*   Given that the Court has found this interpretation to be reasonable, and has found no language in the plan requiring the defendants to independently evaluate the date of onset, Plaintiff's objection is denied.

-14-

Plaintiff further contends that the Defendants wrongly changed their decision regarding his application, at first telling him it would be granted and then denying it.   ECF No. 39 ¶ 17. Although the Court acknowledges that Defendants likely confused and upset Plaintiff by informing him on the telephone that his application would be approved and then later denying the application, the Defendants applied their reasonable interpretation of the plan in determining that Plaintiff's date of onset was in 2006 and that he had no work hours in 2004 and 2005.   The objection is thus denied.

### B.  Count Two: Breach of Fiduciary Duty

There are no objections to the proposed findings and recommendations with respect to Plaintiff's claim for breach of fiduciary duty.

### C.  Count Three: Failure to Provide Plan Fund Documents

On June 3, 2013 and June 18, 2013 Plaintiff sent letters to Defendant Meyers requesting documents related to the pension plan.   ECF No. 26, Exs. 4, 5.   Defendants sent Plaintiff some, but not all, of the documents he requested.   Plaintiff has raised several objections to the findings and recommendations regarding his claim that Defendants failed to produce documents in violation of ERISA.

First, Plaintiff objects to the finding that he is not entitled to the 1999 pension plan.   In his letter of June 3, Plaintiff requested a copy of the pension plan in effect in December 2002, which was the 1999 plan.   See ECF No. 26 Ex. 5; ECF No. 32.   Defendants never sent the 1999 plan to Plaintiff.   ECF No. 32.   The magistrate judge found that Defendants did not violate ERISA by failing to provide the 1999 plan because it was out of date at the time Plaintiff requested

documents and because it does not apply to Plaintiff's claim for benefits.   Plaintiff objects to this finding, both expressly and through his objection relating to the applicability of the 1999 plan.[2]

Plaintiff maintains that he is entitled to an out of date plan because he requested all versions of the plan from the time he left employment.   Additionally, more recent plans often refer back to older versions of the plan, and thus he believes he was entitled to documents dating back to the plan in effect in 2002.   ECF No. 39 ¶ 37.   Although Plaintiff's argument regarding cross-references throughout different versions of the plan is logical, ERISA simply does not require plan administrators to provide out of date versions of a plan.   *See* 29 U.S.C. § 1024; *see also Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 654 (refusing to interpret § 1024 broadly).

Furthermore, Plaintiff argues that the 1999 plan is applicable to his claim for benefits, and thus it should have been sent to him.   ECF No. 39 ¶¶ 4, 5, 6, 7, 10, 37.   Federal courts have found that the plan applicable to an application for benefits is either the version in effect at the time the plan is application is filed, *see, e.g.*, *Snyder v. Titus*, 513 F. Supp. 926, 931 (E.D. Va. 1981), or the version in effect at the time the application is denied, *see, e.g.*, *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003).   Here, the 1999 plan was not in effect either at the time Plaintiff filed his application or at the time Defendants denied it.   *See* ECF No. 26, Exs. 4, 5, 6.

Plaintiff maintains that the language in Section 1.04(e) of the 2003 plan, which discusses the plan's effective date, indicates that the 1999 plan should cover his application.   ECF

---

[2] Plaintiff objects to the finding that the 1999 pension plan does not apply to his application for benefits.   ECF No. 39 ¶¶ 4, 5, 6, 7, 10.   Although Plaintiff reiterates this issue throughout his objections, it is unclear why Plaintiff insists that the 1999 plan applies.   Nowhere in his objections does he claim that use of the 1999 plan as opposed to a later plan would change the outcome of Defendants' decision to deny his application for benefits.   The magistrate judge found that the issue of whether the 1999 plan applies to Defendant's application "has some effect on Plaintiff's failure to provide documents claim."   ECF No. 37.   The Court thus construes this objection to concern Plaintiff's cause of action for failure to provide plan fund documents.

No. 39 ¶ 5.   Specifically, he cites the following language: "The amount of pension benefits and retirement eligibility for those who were vested inactive Participants as of January 1, 2003, shall be those stated in the Plan document in effect at the earlier of the time the Participant left Covered Employment or retired."   ECF No. 26, Ex. 8.   Plaintiff claims that the magistrate judge found that he was a vested participant and Defendants' records show he was an inactive participant, thus the plan in effect when he stopped working in December, 2002 should apply.   Plaintiff's conclusions are incorrect.   First, the proposed findings state that "Plaintiff was a vested participant with regard to *retirement* benefits in the Pension Fund."   ECF No. 37 (emphasis in original).   The magistrate judge did not find that plaintiff was a vested participant with respect to disability benefits, as the plan does not clearly establish that disability benefits are subject to vesting.   ECF No. 37.   Plaintiff challenges this conclusion, arguing that because the plan is unclear, the Court should find disability benefits are subject to vesting.   ECF No. 39 ¶ 4.   The standard in this circuit, however, requires clear language.   *See Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 858 (4th Cir. 1994) (requiring precise language to overcome the presumption that welfare benefits are not vested).   No language in the plan specifically indicates that disability rights are subject to vesting.   Turning to the second requirement of, Section 1.04(e) Defendant's records reflect that Plaintiff was considered an inactive participant in 2006.   ECF No. 26, Ex. 4. This does not mean he was considered an inactive participant as of 2003.   Without more, the Court cannot conclude that Section 1.04(e) applies to Plaintiff.

Plaintiff also argues that the 1999 plan applies because the magistrate judge stated in a footnote that "there is a reasonable argument" that the plan could apply to him.   ECF No. 39 ¶ 6. This objection merely restates one of the proposed findings without pointing to any error in it other than the fact that Plaintiff disagrees with it.

Plaintiff lists several other reasons for applying the 1999 plan to his case: he was provided with the 2003 SPD when he received his application, the denial letters did not state which version of the plan was used, Defendant Meyers sent him the 1999 SPD and 2003 pension plan in response to his letter requesting all documents used to consider his application, and Defendants failed to provide him with the 1999 plan.   ECF No. 39 ¶ 10.   None of these facts indicate that the 1999 plan is applicable to Plaintiff's claim or that Defendant's relied on it.   Accordingly, Plaintiff's objection to the finding that he is not entitled to the 1999 plan is denied.

In related objection, Plaintiff argues that the magistrate judge should not have referenced Section 3.03 of the plan in determining whether the 1999 plan applies to his claim, and, if the court deems this provision applicable, it should also apply Article 4 and grant him 501 hours of credit for each year he was absent from employment.   ECF No. 39 ¶¶ 7-8.   Although the proposed findings reference a portion of Section 3.03, which discusses a break in service, in interpreting and construing the plan, the magistrate judge did not find that the section applies to Plaintiff's claim. The fact that the proposed findings reference a section of the plan related to a break in service does not mean that Plaintiff is automatically entitled to the 501-hour credit for a break in service. Furthermore, as previously discussed, Plaintiff never claimed to be qualified for a break in service under the FMLA and the resulting 501-hour credit.   For these reasons, the objection is denied.

In addition to the 1999 plan, Plaintiff objects to the findings and recommendations regarding other documents that Defendants failed to send.   He maintains that even if Defendants were not required by law to supply him with the other documents he requested, the 2003, 2006, and 2010 SPDs all state that he is entitled to "documents governing the operation of the plan, including insurance contracts and collective bargaining agreements and a copy of the latest annual report." ECF No. 39 ¶ 38.   Although Plaintiff requested documents governing operation of the plans, he

never requested insurance contracts, collective bargaining agreements, or specific reports.  *See* ECF No. 26, Exs. 4, 5.   Moreover, as the magistrate judge properly held, ERISA does not impose statutory penalties for failure to provide documents to which a beneficiary may be entitled under the terms of an SPD; ERISA imposes penalties against a plan administrator for failure "to comply with a request for any information which such administrator is required by [ERISA] to furnish to a participant or beneficiary."   29 U.S.C. § 1132(c)(1) (2012).   The objection is thus denied.

Plaintiff also raises several objections with respect to the statutory penalties that the magistrate judge recommends in connection with his claim for failure to produce documents. Plaintiff "objects to the Court's failure to impose statutory penalties" solely because he failed to raise them in his complaint.   ECF No. 39 ¶ 39.   The magistrate judge noted in her findings that Plaintiff failed to raise the fact that the 2006 SPD was supplied six days late.   Plaintiff argues that he is representing himself *pro se* and his claims should be read broadly.   Although his complaint should be construed liberally, the magistrate judge is not required to invent new claims for Plaintiff.   Furthermore, Plaintiff's complaint and motion for summary judgment point to numerous documents that Defendants failed to provide, but do not claim that the 2006 SPD was late or missing.   As the individual who requested and received the documents, Plaintiff was in as good of a position as an attorney to note the date on which he received the 2006 SPD and add it to his list of claims.   The objection is therefore denied.

Similarly, Plaintiff objects to the finding that Defendants did not act in bad faith and the finding that Plaintiff was only slightly prejudiced by Defendants' failure to produce the 2010 plan. ECF No. 39 ¶¶ 40, 42.   In assessing statutory penalties against a plan administrator, "prejudice is a factor that a district court may consider in deciding whether to impose a penalty."   *Faircloth*, 91 F.3d at 659.   Courts may also consider any bad faith on the part of the administrator.   *Id.*   Here,

-19-

the magistrate judge found no evidence of bad faith but did find that Plaintiff was slightly prejudiced by Defendant's refusal to produce the 2010 plan.   ECF No. 37.   The Court agrees. Nothing in the record shows that Mr. Meyers or the Trustees purposely, or in bad faith, hid the 2010 plan from Plaintiff.   This objection is thus denied.   Likewise, the 2003 and 2010 versions of the plan were so similar, particularly with respect to the language outlining eligibility for disability benefits, that it is unlikely that Plaintiff was significantly prejudiced by filing his appeal without a copy of the 2010 plan.   Nevertheless, Defendants failed to inform Plaintiff which version of the plan they relied on and refused to send him the most recent version, likely causing Plaintiff both confusion and frustration.   The Court thus concurs with the magistrate judge's finding that Plaintiff was minimally prejudiced and denies the objection.

Defendants, too, object to the proposed findings and recommendations with respect to Count III.   Defendants argue that it is clear that they relied on the 2003 version of the pension plan, not the 2010 plan.   ECF No. 38, ¶ 3.   Defendants thus disagree with the finding that there is a genuine issue of material fact as to whether they relied on the 2010 plan in denying Plaintiff's application.   Defendants believe there is no dispute and that they are entitled to summary judgment on this issue.   The Court disagrees.   Nowhere in the denial letters sent to Plaintiff did Defendants make clear which version of the plan they applied to determine Plaintiff's eligibility for benefits.   *See* ECF No. 26, Exs. 4, 6.   Defendants ask the Court to take them on their word rather than look to the evidence in the administrative record.   The Court declines to do so and the objection is denied.

### D.  Count Four: Bad Faith/Gross Negligence

There are no objections to the proposed findings and recommendations with respect to Plaintiff's claim for bad faith and gross negligence.   ECF No. 39 ¶¶ 40, 42.

### E.  Count Five: Equitable Estoppel

Plaintiff raises two objections in connection with his claim for equitable estoppel.   First, he objects to the finding that Defendants are not equitably estopped from denying his application for benefits because it was impossible for him to meet the 1,000-hour requirement in 2004 and 2005 when he was physically unable to work.   ECF No. 39 ¶ 1.   As the Court thoroughly explained above, Defendants were reasonable in relying on the SSA date of disability onset. Once the date of onset is determined, the 1,000-hour requirement automatically applies to the two years preceding the year of onset: in this case 2004 and 2005.   Whether or not Plaintiff was physically capable of work in those two years, those are the two years that Defendants were required to assess in order to determine Plaintiff's eligibility for benefits.   Plaintiff did not work during those years and thus his application was denied in accordance with the plan requirements. Furthermore, the Court notes that Plaintiff does not explain how a factual or legal impossibility warrants the remedy of equitable estoppel.   Elements of an estoppel claim include conduct by a defendant and reliance on that conduct by the plaintiff.   31 C.J.S. *Estoppel and Waiver* § 94 (2015).   These elements are absent from Plaintiff's claim for equitable estoppel based on impossibility.   The objection is thus denied.

Second, Plaintiff objects to the "characterization of Gary Meyers' actions as a 'mistake.'" ECF No. 39 ¶ 43.   Plaintiff argues that Defendant Meyers deliberately approved Plaintiff's application after Plaintiff informed him of the discrepancy between the SSA's date of disability onset and his actual date of disability onset and then later changed his decision.   Plaintiff's objection is moot because the decision to deny his claim for equitable estoppel does not turn on Defendant Meyers's intent or knowledge.   The magistrate judge recommends denial of Plaintiff's

claim for equitable estoppel because Plaintiff failed to show any detrimental reliance on the initial phone call informing him that his application was approved.   The Court agrees with the proposed recommendation.   When a plaintiff brings a claim equivalent to equitable estoppel under ERISA, "a showing of detrimental reliance must be made." *Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1881 (2011).   Plaintiff has not shown that he relied to his detriment on the first phone call before Defendants informed him later that same day that his claim was in fact denied.   The objection is therefore denied.

### F.  Count Six: Fees and Costs

Defendants object to the finding that Plaintiff is entitled to costs.   ECF No. 38 ¶ 4. Defendants insist that Plaintiff should not succeed on the merits and thus should not obtain court costs.   Defendants argue that if they "did not rely on the 2010 Plan document, there was no success on the merits."   ECF No. 38 ¶ 4.   Defendants' objection misreads the proposed findings and recommendations.   The magistrate judge found that Plaintiff is entitled to costs because he succeeded on the portion of his claim under Count Three that sought a copy of the 2010 plan based on his June 18, 2013 request for "all amendments to the plan and SPD since December 2002." ECF No. 37.   The magistrate judge found that due to Plaintiff's June 18 request, he was entitled to the 2010 plan regardless of whether Defendants relied on the plan in assessing Plaintiff's application.   ECF No. 37.   The Court agrees that ERISA required Defendants to supply the 2010 plan, irrespective of whether they relied on it, in response to Plaintiff's June 18 request.   *See* 29 U.S.C. § 1024(b)(4) (requiring plan administrator to furnish copy of the most recent plan upon request).   The Court therefore **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion for summary judgment with respect to the portion of Count Three that claims Defendants failed to provide copies of all plan document amendments since 2002 after Plaintiff's

letter of June 18, 2013 to the extent that the claim encompasses the 2010 version of the plan. Given his partial success on the merits, Plaintiff is entitled to costs.[3]   Accordingly, this objection is also denied.

### G.  Miscellaneous Objections

In addition to the objections discussed above, Plaintiff has filed several objections that do not directly relate to the substance of his claims against Defendants.   First, Plaintiff objects to the finding that the amended 2003 pension plan and 2010 pension plan contain identical requirements for eligibility because the magistrate judge stated in a footnote that the 2003 plan was amended in 2004 "making it impossible for the requirements to be identical."   ECF N. 39 ¶ 16.   The proposed findings state that the amended 2003 plan and 2010 plan contain identical requirements, not that the 2003 plan and amended 2003 plan are identical.   Moreover, the magistrate judge only refers to the *amended* 2003 plan, thus discussing the plan after the 2004 amendment.   Plaintiff's objection creates a false paradox and is without merit.   The objection is thus denied.

Plaintiff also objects to the finding that he did not present evidence as to how the Trustees decided past claims for benefits.   He states that he does not have this information and that the Trustees are the ones who possess such evidence.   The magistrate judge noted that "Plaintiff has not pointed to any evidence demonstrating that the Trustees' interpretation of the plan was inconsistent with earlier interpretations of the plan."   ECF No. 37.   Plaintiff's objection misinterprets the finding.   The statement is not meant to fault Plaintiff or accuse him of failing to present necessary evidence.   Rather, it is one of many points included in the findings and recommendations that support the conclusion that the Trustees' interpretation of the plan was

---

[3]  Pursuant to Local Rule of Civil Procedure 54.1, costs will be calculated after the final judgment is entered in the case.

reasonable.   Moreover, the statement is accurate as Plaintiff has not provided the Court with any inconsistent prior interpretations.   The objection is thus denied.

Next, Plaintiff "objects to the finding that he was not unable to work due to disability in 2004 and 2005."   ECF No. 39 ¶ 34.   Nowhere in the proposed findings and recommendations does the magistrate judge affirmatively find as much.   Rather, she states that "Plaintiff had not been found disabled by the SSA in 2004 and 2005."   ECF No. 37.   This is an accurate statement which reflects the disability onset date in ALJ Chwalibog's SSA decision.   ECF No. 26, Ex. 2. The objection is denied.

Plaintiff also objects to the characterization of ALJ Chwalibog's decision.   He "objects to the finding that ALJ Chwalibog ultimately found that Plaintiff was disabled as defined by SSA from April 26, 2006" without clarification of how the ALJ chose this date.   ECF No. 39 ¶ 44.   He also challenges the finding that he "argued" that ALJ Chwalibog's decision was based on medical conditions predating 2006 because he "did not just argue this point but submitted evidence."   ECF No. 39 ¶ 45.   This objection disputes the characterization of background facts which do not directly pertain to any specific finding against Plaintiff.   These facts are also accurate based on the administrative record and pleadings.   Accordingly the objection is denied.

Furthermore, Plaintiff objects "to any findings and recommendations contrary to Mr. Murphy regarding the 2003 SPD as this evidence is apparently not in the record."   ECF No. 39 ¶ 11.   This part of the objection is overbroad and does not point the Court to a specific error in the magistrate judge's findings or recommendations.   Plaintiff goes on to argue that the language "onset of total and permanent disability" is not in the 2003 SPD and therefore should not have been considered in the findings and recommendations.   Although the magistrate judge briefly discussed the 2003 SPD in a footnote, the Court finds no evidence that the magistrate judge relied

-24-

on such language from the 2003 SPD.   Rather, the magistrate judge quoted the 2003 pension plan in her findings.   The 2003 pension plan is part of the administrative record and the magistrate judge quoted the plan accurately.   Accordingly, the Court finds that this objection has no merit and denies the objection.

Next, Plaintiff objects to the proposed findings to the extent that they reflect that Plaintiff continued to work after his injury in 2001 until December 2002 "without clarification that the evidence . . . establish that he was seeking medical treatment during this entire time period."   ECF No. 39 ¶ 46.   Whether Plaintiff sought medical treatment while continuing to work after his initial injury is a question that has no impact on the outcome of this case.   Moreover, the magistrate judge was not incorrect in finding that Plaintiff worked until 2002 just because she did not also include a finding that Plaintiff sought medical treatment during this time.   The objection is thus denied.

Plaintiff also objects to the characterization of the state workers' compensation benefits Plaintiff received through the Industrial Commission of Ohio.   ECF No. 39 ¶¶ 35, 47-49.   He objects to the magistrate judge's failure to include a finding that Plaintiff's benefits were based on continuing symptoms and a finding that there was never a lapse in his temporary total disability benefits.   Furthermore, he objects to the "unclarified [sic] factual finding that 'new and changed circumstances required reinstatement of his benefits'" because his "medical conditions themselves were not 'new or changed circumstances.'"   The nature and timeline of Plaintiff's workers' compensation benefits do not affect the outcome of this case.   The findings regarding these benefits serve mostly as background information.   As the magistrate judge noted, neither the SSA nor the pension plans require use of the state agency's findings.   Moreover, as explained above, Defendants properly based their decision to deny Plaintiff benefits on the date of disability onset

established by the SSA.   The date of onset established by the Industrial Commission of Ohio, and the nature of the benefits Plaintiff received from the state, are therefore irrelevant.   For these reasons, the objection is denied.

Finally, Plaintiff "objects to any claims and issues that he raised in his Motion for Summary Judgment" that were not addressed in the proposed findings and recommendations. ECF No. 39 ¶ 50.   This is a general objection that fails to point the Court to any specific error in the findings and recommendations.   It is thus without merit and is denied.

Conclusion

For the foregoing reasons, the Court **ADOPTS** and **INCORPORATES** herein the Findings and Recommendations of the Magistrate Judge (ECF No. 37); **DENIES** Plaintiff's objections (ECF No. 39); **DENIES** Defendants' objections (ECF No. 38); **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment (ECF No. 29); **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (ECF No. 31); **FINDS** that a genuine issue of material fact exists as to part of Count III of Plaintiff's Complaint; and **AWARDS** the sum of Seven Thousand Four Hundred Fifty Dollars ($7,450.00) to Plaintiff.

The Court further refers this action back to the Magistrate Judge for further proceedings consistent with this decision.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Eifert, counsel of record, and any unrepresented parties.



ENTER:        September 29, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE